UNITED STATES *v.* SCRUGGS-VANDERVOORT-BARNEY DRY GOODS Co. (No. 3348)[1]

United States Court of Customs and Patent Appeals, December 1, 1930

*Charles D. Lawrence,* Assistant Attorney General (*John F. Kavanagh* and *William H. Futrell,* special attorneys, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 14, 1930, by Mr. Futrell and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Certain linen and cotton voile dresses were assessed for duty by the collector at the port of St. Louis as "articles * * * from which threads have been omitted, drawn, punched, or cut, and with

---

[1] T. D. 44450.

threads introduced after weaving to finish or ornament the open-work, not including straight hemstitching * * *" at 75 per centum ad valorem under paragraph 1430 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1430. * * * embroideries not specially provided for, and all fabrics and articles embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, appliquéd, scalloped, or ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including straight hemstitching; all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or products of cellulose provided for in paragraph 1213, 75 per centum ad valorem.

The importer protested, claiming, alternatively, that the merchandise was properly dutiable under various paragraphs of the act. However, the claims made on the trial below and in this court on appeal are limited to paragraphs 919 and 1017, the pertinent parts of which read as follows:

PAR. 919. Clothing and articles of wearing apparel of every description, manufactured wholly or in part, composed wholly or in chief value of cotton, and not specially provided for, 35 per centum ad valorem.

PAR. 1017. Clothing, and articles of wearing apparel of every description, composed wholly or in chief value of vegetable fiber other than cotton, and whether manufactured wholly or in part, not specially provided for, 35 per centum ad valorem; * * *

It appears from the record that some of the dresses are linen, and some are cotton.

Counsel for the importer contends that the cotton dresses are properly dutiable under paragraph 919, and the linen dresses under paragraph 1017.

On the trial below several exhibits were introduced in evidence by the importer. Exhibits 1 to 5, inclusive, are representative of the involved merchandise. Exhibit 6 is a schedule of the invoice items involved in the controversy. Illustrative Exhibit A, according to the witnesses for the importer, represents a "cheap grade" of "openwork"; it has been hemstitched and then finished and ornamented by introducing an additional thread, which, together with the cross threads remaining in the "openwork," has been so manipulated as to form crosses. Illustrative Exhibit B, according to the importer's witnesses, represents "openwork" finished by straight hemstitching.

Mrs. Margaret Berg, a witness for the importer, testified that she was an "assistant buyer of the negligee and house dress department" of appellee; that she had handled "thousands of dozens" of articles of women's wearing apparel; that she had been familiar with the

terms "hemstitching," "openwork," and "drawn work" since child-hood; that the "openwork" in the involved dresses had been finished by plain or straight hemstitching, and that no other threads had been introduced for the purpose of finishing or ornamenting the "openwork"; and that "plain hemstitching" and "straight hem-stitching" have the same meaning and are used interchangeably.

The witness, Miss Emma C. Hansen, employed for six years as a dress designer by the Ely-Walker Dry Goods Co., for nine years as a dress designer for M. E. Smith & Co. of Omaha, Nebr., and, prior to holding those positions, in a dressmaking shop, testified that the "openwork" appearing on the involved dresses had been finished by the "plainest kind" of hemstitching, and that no threads had been introduced for the purpose of finishing or ornamenting the "openwork." With reference to drawn work she said:

Q. Can you explain briefly, irrespective of Exhibits A or 1 to 5, the difference between a drawn work and a hemstitched article?—A. It is the drawn work article that has a design made by a thread that you do not find on hemstitching.

Q. By a design made by a thread you mean some superimposed design formed by threads?—A. Yes. *You can form spider webs, acorns, or anything you want in design with an extra thread after you have drawn your threads and finished your hemstitching.*

Justice BROWN. Is it the extra thread in the design that makes it drawn work?

The WITNESS. Yes, sir.

Justice BROWN. Isn't that drawn work?

The WITNESS. It is simply hemstitching; *hemstitching is the foundation before you start any drawn work.*

Q. Do you know, or have you observed, any hemstitching that is plainer or straighter than in the Exhibits 1 to 5 which I show you? You have examined these?—A. Yes, sir.

Q. Have you ever observed any simpler or plainer or straighter hemstitching than is on these exhibits?—A. No, sir; that is what they teach schoolgirls when they take the work at school. I know them all by heart. [Italics ours.]

The Government called but one witness, Charles E. Green, chief assistant appraiser (probably at the port of St. Louis). He had been in the Government service as an assistant appraiser for 30 years. However, he was not even requested to advise the court as to the character of the involved merchandise. We quote the only pertinent testimony given by him:

Q. And during that 30 years how much time has been spent appraising mer-chandise like Exhibits 1 to 5, which I now show you, approximately?—A. This being made 75 per cent has only been done since last November, 1924, since that decision has been handed down.

The court below sustained the protests, basing its decision upon the testimony of the importer's witnesses, together with definitions of the term "hemstitching" taken from several technical authorities.

We are of opinion that but one of the many reasons advanced by Government counsel for reversal of the judgment below is of sufficient

consequence to warrant consideration here. We quote from the Government's brief:

From the foregoing definitions it appears that all hemstitching, including straight hemstitching, must be plain and be adjacent to the hem or edge of the article, as illustrated in the ordinary hemmed pocket handkerchief.

The definitions referred to by counsel are taken from Webster's New International Dictionary, and are as follows:

Straight.—4. Direct; uninterrupted; unbroken; * * *
Hem.—The edge or border of a garment or cloth; * * *
Hemstitch.—To ornament at the head of a hem by drawing out a few parallel threads and fastening the cross threads in successive small clusters.

The term "hemstitch" is defined in Funk & Wagnalls' New Standard Dictionary as follows:

hemstitch, n. 1. The ornamental finishing of the inner edge of a hem, done by pulling out several threads adjoining it and drawing together in groups the cross threads by successive stitches.

The following definitions of the word "hemstitching" are quoted in the decision of the court below:

Hemstitching is a line of openwork made by drawing out parallel threads and fastening the cross threads in successive small clusters.—"The Dressmaker," edited by the Butterick Publishing Co.

A sewing operation done by hand and consisting of pulling out two or more parallel threads on the material and fastening the cross threads in successive clusters. A similar effect is produced by machines made specially for the purpose.—"Woman's Institute of Library Dressmaking," edited by Mary Brooks Picken, director of Woman's Institute of Domestic Arts and Science.

A term in needlework designating the mode of producing a delicate kind of openwork, by drawing together certain threads in the material of the stuff to be sewn in small successive clusters.—Caulfield & Sawards Dictionary of Needlework.

Designs in drawnwork, more or less elaborate, are used to *decorate surfaces as well as hems. Hemstitching is used as a foundation for these designs.* * * * *The basis of drawn work is hemstitching. The threads are drawn and fastened down on each edge with hemstitching.* [Italics ours.]—"A Sewing Course," Mary S. Woolman, professor of domestic art in Teachers College and director of Manhattan School for Girls.

It clearly appears from, at least, one of the quoted definitions and from the testimony of the witnesses for the importer that the term "hemstitching" is employed to describe certain stitches used to fasten the cross threads in "openwork" into successive small clusters, wherever the "openwork" may appear on an article, and that the term is not limited to such stitches as are, or may be, used on, or adjacent to, the hems or edges of such articles.

Of course, courts are not bound by the testimony of witnesses as to the common meaning of a statutory term, but when, as in the case at bar, lexicographers and technical authorities disagree, the uncon-

tradicted testimony of competent witnesses as to the common meaning of such term is entitled to great weight.

In the case of *Massce & Co.* v. *United States*, 18 C. C. P. A. (Customs) 243, T. D. 44424, decided November 10, 1930, this court, in an opinion by Garrett, J., said:

* * * "Openwork" and "drawnwork" are not mentioned as articles in paragraph 1430. The word "drawnwork" is not used at all, and "openwork" is used only to describe a condition in an article produced by omitting, drawing, punching or cutting the threads of the article.

The only mention of "hemstitching" in the paragraph is apparently to distinguish *straight* hemstitching from some other method or plan of introducing threads "after weaving to finish or ornament the openwork" which has been produced by omitting, drawing, punching or cutting threads from the fabric.

It appears from the uncontradicted testimony in the record that, as commonly understood, the terms "plain hemstitching" and "straight hemstitching" have the same meaning and are used interchangeably. It also appears from the testimony and from an examination of Exhibits 1 to 5, inclusive, that the "openwork" appearing on the involved dresses has been finished by straight hemstitching, and that no additional threads have been introduced, either to finish or to ornament the "openwork." Obviously, then, the involved "openwork" is not of the character of that provided for in paragraph 1430. *Massce & Co.* v. *United States, supra.*

We conclude that the court below reached the right conclusion, and its judgment is, therefore, *affirmed.*